UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE MARIE SWIGER,

    Plaintiff,                              Civil Action No. 19-CV-12014

vs.                                        HON. BERNARD A. FRIEDMAN

JOEL ROSETTE, et al.,

    Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT REES' MOTIONS TO COMPEL ARBITRATION AND TO TRANSFER VENUE

This matter is presently before the Court on the motions of defendant Kenneth Rees ("Rees") to compel arbitration [docket entry 5] and to transfer venue [docket entry 6]. Plaintiff has responded and Rees has replied to both motions. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

Plaintiff has brought this action against Rees and three other individuals[1] for their involvement in lending her money on usurious terms (354% APR) through an entity called Plain Green LLC ("Plain Green"). Plain Green was allegedly created by Think Finance LLC ("Think Finance") whose principal is defendant Rees. Plaintiff alleges that Plain Green is a "rent-a-tribe enterprise . . . formed under the law of the Chippewa Cree, . . . to serve as the front to disguise Think Finance's role and to shield the scheme from application of federal and state law by exploiting tribal sovereign immunity." Compl. ¶¶ 2, 4. Plaintiff asserts claims for civil RICO, unjust enrichment, violation of Michigan's Consumer Protection Act, among other claims.

---

[1] Plaintiff recently voluntarily dismissed the complaint as to these other individuals. Therefore, the only remaining defendant in this matter is Rees.

*Arbitration*

In the first motion now before the Court, Rees seeks "an order staying this matter and compelling arbitration pursuant to a written agreement to arbitrate signed by Plaintiff and contained within her loan agreement." Def.'s Mot. to Compel at 1. The arbitration clause, which is found at pages 8-9 of the loan agreement, states that the borrower had sixty days from the origination dates to opt out of this clause, and in that event "any disputes shall be governed under tribal law and must be brought in the Chippewa Cree Tribal Court." Compl. Ex. B. If the borrower does not opt out, then "any dispute you have related to this agreement will be resolved through binding arbitration" at JAMS or the American Arbitration Association ("AAA"). *Id.* Further, the arbitration clause requires the arbitrator to apply tribal law, deprives the arbitrator of any "authority to conduct class-wide proceedings," and permits review of an arbitrator's decision only by a tribal court. *Id.* Rees seeks to compel plaintiff to arbitrate the instant dispute, as she did not opt out of the arbitration clause.

This precise issue has already been litigated, and decided against Rees, in a similar case commenced in Vermont. *See Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2nd Cir. 2019). In that case, as here, plaintiffs sued Rees (and Think Finance, the CEO of Plain Green, and other related entities), for lending them money on usurious terms. As in the present case, the defendants in *Gingras* sought an order compelling plaintiffs to arbitrate based on the same arbitration clause at issue here. In affirming the district court's denial of that motion, the Second Circuit stated:

> First, we conclude that the arbitration agreements are unenforceable because they are designed to avoid federal and state consumer protection laws. Similar to the agreement in *Hayes*, Plaintiffs' agreements here require the application of tribal law only and disclaim the application of state and federal law. *See* J. App. 116–17. The arbitration mechanism in these agreements purports to offer

2

neutral dispute resolution but appears to disallow claims brought under federal and state law. And the Supreme Court has made clear that arbitration agreements that waive a party's right to pursue federal statutory remedies are prohibited. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013). By applying tribal law only, arbitration for the Plain Green borrowers appears wholly to foreclose them from vindicating rights granted by federal and state law. We agree with the Fourth Circuit that "[t]he just and efficient system of arbitration intended by Congress when it passed the FAA may not play host to this sort of farce." *Hayes*, 811 F.3d at 674.

Defendants' argument that tribal law perhaps incorporates, or can be supplemented with, some federal law or Montana law does not save the agreements. It is altogether unclear what that incorporation or supplementation would look like. Tribal law is generally unavailable outside of the reservation, and Plaintiffs plausibly allege that any tribal law that would be applied has been carefully tailored to protect Plain Green's interests. *See* J. App. 73 ("[The Tribe agreed to] adopt a finance code that is acceptable to all parties and provide for the licensing of an arm of the tribe to engage in consumer lending."). Tribal law provides no guarantee that federal and state statutory rights could be pursued, much less vindicated, in this arbitral forum.

Second, we conclude that the arbitration agreements are substantively unconscionable under Vermont law because the arbitral forum for which they provide is illusory. While the agreements provide for arbitration to be conducted by an AAA or JAMS arbitrator at a location convenient for the borrower, the mechanism of tribal court review hollows out those protections. Rather than the sharply limited federal court review of the arbitrators' decisions as constrained by the FAA, the review by tribal courts under these agreements hands those courts unfettered discretion to overturn an arbitrator's award. *See id.* 116 (any arbitral award "may be set aside by the tribal court upon judicial review"). Ultimately, the tribal court is directed to interpret its own law—alleged to be completely one-sided in favor of the tribe—which effectively insulates the tribe from any adverse award and leaves prospective litigants without a fair chance of prevailing in arbitration. *See Jackson*, 764 F.3d at 778-79 (applying Illinois law).

Adding to the unconscionability of arbitrating under these terms are the allegations of corruption in tribal government. Not only have several tribal officers pleaded guilty to federal corruption crimes, but an FBI and Interior Department investigation uncovered tribal judges

> who felt intimidated enough to rule for the Tribe when they otherwise may not have. *See* J. App. 279–81. Requiring non-tribal plaintiffs to be subject to an illusory arbitration reviewed in toto by a tribal court with a strong interest in avoiding an award adverse to the lender is unconscionable.
>
> Nor do the opt-out provisions save the agreements. Plaintiffs must opt out within 60 days of entering the agreement, which is unlikely for unsophisticated payday loan borrowers who may well be stuck in a cycle of debt and require a stream of new loans to pay off old loans. Further, opting out merely puts plaintiffs in tribal court—the same hostile forum in which they would end up after arbitration.

*Gingras*, 922 F.3d at 127-28 (footnote omitted).

The Court adopts this reasoning and shall deny Rees' motion to compel arbitration on the same grounds. Additionally, Rees is collaterally estopped from relitigating this issue, as he was a party in *Gingras*, and the issue is identical in both cases and was fully litigated in *Gingras*. *See Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005).

*Venue*

Rees also asks that the Court transfer this matter pursuant to 28 U.S.C. § 1412 "to the United States District Court for the Northern District of Texas, where related chapter 11 bankruptcy proceedings are currently pending." Def.'s Mot. to Transfer at 1 (referring to *In re Think Finance, LLC*, Case No. 17-33964 (Bankr. N.D. Tex.)).

Section 1412 permits the Court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." This statute has no application in the instant matter, which is not "a case or proceeding under title 11." Nor has Rees shown that the relationship between the instant case (against Rees only) and the Texas bankruptcy (against Think Finance only) is close enough to justify the requested transfer. Nor would the requested transfer be convenient for "the parties." This is, at this point, a case between

4

a single plaintiff and a single defendant. Even if the requested transfer would be convenient for Rees, it would be highly inconvenient for plaintiff, a Michigan resident with limited means, and a case should not be transferred when the effect "would be merely to simply shift the inconvenience from one party to another." 15 C. Wright & A. Miller, *Federal Practice and Procedure* § 3849, p. 216 (2013).

*Conclusion*

For the reasons stated above,

IT IS ORDERED that defendant Rees' motion to compel arbitration is denied.

IT IS FURTHER ORDERED that defendant Rees' motion to transfer venue is denied.

s/Bernard A. Friedman
Dated: December 6, 2019     BERNARD A. FRIEDMAN
       Detroit, Michigan     SENIOR UNITED STATES DISTRICT JUDGE